Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| FERNANDO L. TROCHE RIVERA<br><br>Recurrido<br><br>v.<br><br>ALIANZA CORRECCIONAL UNIDA SERVIDORES PÚBLICOS UNIDOS AFSCME LOCAL 3500, et al.<br><br>Peticionaria | KLCE202500379 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2024CV10436<br><br>Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, la Jueza Santiago Calderón, y la Jueza Trigo Ferraiuoli[1].

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de noviembre de 2025.

Comparece la parte peticionaria, Alianza Correccional Unida Servidores Públicos Unidos AFSCME Local 3500 (la Unión), mediante recurso de *certiorari* presentado el 11 de abril de 2025. En este solicita que revoquemos la *Resolución Interlocutoria* emitida el 20 de febrero de 2025, notificada el 24 de febrero de 2025[2], por el Tribunal de Primera Instancia, Sala de San Juan (TPI). En el referido dictamen, el TPI, en reconsideración y a la luz de lo resuelto por el Tribunal Supremo en el caso *Landrau v. Autoridad de los Puertos,* 2025 TSPR 7, dejó sin efecto la *Sentencia Parcial* del 23 de enero de 2025 en la que había desestimado la causa de acción contra la Unión por prescripción.

---

[1]Véase, Orden Administrativa OATA-2025-170 en la que se designó a la Jueza Trigo Ferraiuoli en sustitución del Juez Adames Soto.
[2] Oportunamente, la Unión solicitó reconsideración. Mediante *Orden* emitida y notificada el 12 de marzo de 2025, el TPI denegó la solicitud de reconsideración.

El 22 de octubre de 2025 emitimos una *Resolución* en la que dispusimos el trámite conjunto del presente recurso con el recurso TA2025AP00064, ya que por consideraciones tecnológicas estos no se pueden consolidar en el sistema SUMAC TA.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y CONFIRMAMOS la *Resolución Interlocutoria* emitida el 23 de enero de 2025.

## I. Resumen del tracto procesal y fáctico

## A. Tracto Procesal

El Sr. Fernando Troche Rivera ocupaba el puesto de Oficial Correccional I en el Departamento de Corrección y Rehabilitación (DCR). Este era miembro de una unidad representada por la Alianza Correccional Unida Servidores Públicos Unidos AFSCME LOCAL 3500 (la Unión), mediante el convenio colectivo suscrito entre la Unión y DCR, al amparo de la *Ley de Relaciones del Trabajo para el Servicio Público,* Ley Núm. 45-1998, según enmendada[3]. El 6 de agosto de 2019, Troche Rivera fue suspendido sumariamente de empleo a consecuencia de un incidente ocurrido el 24 de julio de 2019 en la Institución Centro Médico Correccional de Bayamón (CMC) durante una intervención con una confinada. El 16 de septiembre de 2019, este fue despedido[4].

El 27 de septiembre de 2019 la Unión, en representación de Troche Rivera, apeló su destitución ante la Comisión Apelativa de Servicio Público (CASP). Luego de varias incidencias procesales, la vista de arbitraje se celebró el 30 de abril de 2021 ante la Árbitra Beatrice Ríos Ramírez. El DCR estuvo representado por el Lcdo. Ferdinand Ocasio Vélez, mientras que Troche Rivera compareció representado por la licenciada Jiménez Rosario, representante legal

---

[3] 3 LPRA § 1451 *et seq.*
[4] Véase, *Demanda sobre Sentencia Declaratoria* SJ2023CV05719, Entrada Núm. 1 SUMAC TPI.

y portavoz de la Unión. Presentada la prueba, el caso quedó sometido para adjudicación y el 6 de diciembre de 2022, la CASP emitió y notificó el *Laudo de Arbitraje* (L-22-061) en el que dejó sin efecto el despido de Troche Rivera, modificó la medida disciplinaria a una suspensión de empleo y ordenó la reinstalación inmediata de Troche Rivera a su puesto de trabajo, entre otros remedios.

**B. Nulidad de Laudo de Arbitraje**

El 14 de junio de 2023, el DCR acudió ante el Tribunal de Primera Instancia de San Juan y presentó una demanda sobre sentencia declaratoria en contra de la Unión y Troche Rivera (SJ2023CV05719). En síntesis, alegó que la Unión debió presentar la apelación de despido de Troche Rivera ante la Comisión de Investigación, Procesamiento y Apelación (CIPA), ya que, en virtud de la Ley Núm. 32-1972[5], es el ente con jurisdicción exclusiva para actuar como cuerpo apelativo en casos donde se haya impuesto cualquier medida o sanción disciplinaria a un funcionario empleado de la Rama Ejecutiva, Estatal o Municipal autorizado para efectuar arrestos, en relación con actuaciones donde se le imputa mal uso o abuso de autoridad. En vista de lo anterior, el DCR argumentó que la CASP actuó sin jurisdicción al emitir el laudo de arbitraje. Sobre el particular, alegó que un planteamiento de falta de jurisdicción se puede presentar en cualquier etapa de los procedimientos y que, al CASP actuar sin jurisdicción y emitir el laudo de arbitraje, este era nulo *ab initio.*

Luego de varios trámites, el 12 de diciembre de 2023, el TPI emitió *Sentencia.* El TPI determinó que, debido a que a Troche Rivera le imputaron faltas sobre actuaciones de mal uso o abuso de autoridad, la CASP actuó sin jurisdicción, pues la árbitra no auscultó primero la jurisdicción de CIPA en virtud de su ley

---

[5] Ley de la Comisión de Investigación Procesamiento y Apelación (CIPA), 1 LPRA §171 *et seq.*

habilitadora. En vista de lo anterior, el TPI determinó que el laudo de arbitraje emitido era nulo.

El 27 de diciembre de 2023, a catorce (14) días de haberse notificado la sentencia, Troche Rivera recibió un mensaje vía correo electrónico de parte de la licenciada Jiménez Rosario, el cual lee como sigue,

> "Saludos Fernando,
>
> Espero que al recibo de este correo te encuentres bien. En el caso de referencia, el Tribunal dictó Sentencia Declaratoria anulando el Laudo. Lamentablemente la Unión no estará acudiendo en revisión de dicho dictamen por razón de que entendemos que el Tribunal de Apelaciones no variará la decisión del Tribunal. No obstante, el término para apelar vence el 12 de enero de 2024.
>
> Cualquier duda y.o (sic) pregunta te puedes comunicar con esta servidora.
>
> Yarlene Jiménez Rosario, Esq.
> PMB 133
> 1353 Ave. Luis Vigoreaux
> Guaynabo, PR 00966-2700.
> Telf. 787-633-6931
> Fax. 787-781-8885"[6]

## C. Demanda de Daños y Perjuicios

Así las cosas, el 10 de noviembre de 2024, Troche Rivera presentó una demanda sobre daños y perjuicios en contra de la Unión (SJ2024CV10436). En síntesis, alegó que la Unión, a pesar de haber sido apercibida de que debía apelar ante la CIPA no lo hizo y, por ende, la demanda sobre sentencia declaratoria presentada por el DCR se declaró Con Lugar, quedando nulo el laudo de arbitraje y Troche Rivera destituido. Añadió que la actuación de la Unión de apelar ante el foro equivocado fue negligente y temeraria, pues ésta tiene experiencia en este tipo de casos y tuvo la oportunidad de leer la determinación que apeló y percatarse del foro adecuado para recurrir. Por lo anterior, afirmó que las actuaciones negligentes y temerarias de la Unión le causaron daños y angustias mentales, consistentes en que perdió su empleo, lo cual, presentado ante el

---

[6] Véase Anejo 1 y 2 de la Entrada Núm. 4 de SUMAC-TPI. (Subrayado nuestro).

foro adecuado, no hubiera ocurrido. También reclamó angustias mentales por $75,000.00 y los daños causados por la pérdida de su empleo estimados en $130,182.00, más los que se acumulen.

El 2 de enero de 2025, la Unión presentó una *Moción de Desestimación por Prescripción y Falta de Jurisdicción sobre la Materia.* En cuanto al planteamiento de falta de jurisdicción, la Unión planteó que la CASP era el foro con jurisdicción primaria exclusiva para atender las controversias surgidas entre la Unión y sus miembros bajo las disposiciones de la Ley Núm. 45-1998, *supra.* Sobre el particular, argumentó que la causa de acción presentada por Troche Rivera se encuentra consignada en la Sección 9.2 de la Ley 45-1998, *supra*, sobre *Prácticas Ilícitas de las Organizaciones Sindicales o de sus Miembros.* En específico, señaló que el inciso (f) de la citada sección, establece como práctica ilícita el que una unión se niegue a someter las quejas, agravios y otras controversias que surjan con la agencia u otras organizaciones de empleados sobre los procedimientos dispuestos en un convenio o en la ley. Por ello, la Unión sostuvo que la reclamación presentada por Troche Rivera imputaba una práctica ilícita del trabajo contra la Unión, y, por ende, la CASP era quien tenía jurisdicción sobre la materia.

Además, señaló que la ley habilitadora de la CASP establece que ésta tendrá jurisdicción exclusiva sobre las reclamaciones surgidas como consecuencia de acciones o decisiones de las organizaciones laborales, sindicales u obreras y de los representantes exclusivos en violación a las disposiciones de la Ley Núm. 45-1998, según enmendada. También, argumentó que el Artículo 4 de la *Carta de Derechos de los Empleados Miembros de una Organización Laboral,* Ley Núm. 333-2004, le confiere jurisdicción a la Comisión para atender y resolver querellas de los empleados miembros de una organización laboral conforme a la Ley 45-1998, *supra.*

En cuanto al planteamiento de prescripción, la Unión alegó que la causa de acción instada por Troche Rivera estaba prescrita, por haberse presentado luego de transcurrido el término de seis (6) meses aplicables a su causa de acción. En síntesis, basó su argumentación en lo resuelto por el Tribunal Supremo de Estados Unidos en el caso Del Costello v. Teamsters, 462 U.S. 151 (1983), el cual estableció un término jurisdiccional de seis (6) meses para presentar una reclamación por representación inadecuada.

La Unión arguyó que la reclamación de Troche Rivera era precisamente sobre representación inadecuada en un caso de despido, por lo cual le aplicaba el término de seis (6) meses. Sostuvo que, ante el hecho de que Troche Rivera tuvo conocimiento de la nulidad del laudo de arbitraje el 27 de diciembre de 2023, era a partir de dicha fecha que comenzaba a contarse el término prescriptivo de seis (6) meses para presentar su causa de acción. En vista de que Troche Rivera presentó la reclamación contra la Unión a los (10) meses y catorce (14) días, la Unión alegó que estaba prescrita. Por ello, solicitó la desestimación de la demanda.

El 23 de enero de 2025, Troche Rivera presentó *Moción en Oposición a Desestimación*[7]. En resumen, alegó que, en su demanda, éste no cuestiona el derecho de representación que dispone la Ley Núm. 45-1998, *supra*. Al respecto, expuso que la controversia era en cuanto a la negligencia en el manejo de la reclamación, lo cual no es un derecho protegido en la carta de derechos de los empleados miembros de una organización laboral. A raíz de lo anterior, argumentó que la Unión no violó la Ley Núm. 45-1998, *supra*, por lo que no procede la alegación de prescripción, ya que el término prescriptivo aplicable es de un (1) año. Por último, adujo que, al no habérsele violado derechos a Troche Rivera al amparo de la Ley

---

[7] Entrada Núm. 7 SUMAC-TPI.

Núm. 45-1998, *supra*, tampoco procedía la alegación de falta de jurisdicción, toda vez que su caso era de daños y perjuicios por negligencia, por lo que solicitó se declarara No Ha Lugar la moción de desestimación de la Unión.

En igual fecha, Troche Rivera presentó una *Demanda Enmendada*, a los efectos de incluir a la licenciada Jiménez Rosario como codemandada. En síntesis, le imputó las mismas alegaciones de negligencia. A ello añadió que la actuación de la licenciada Jiménez Rosario de apelar en el foro equivocado constituye negligencia en el desempeño de sus deberes como abogada. También alegó que las actuaciones de la licenciada Jiménez Rosario le causaron daños y angustias mentales. Por último, señaló que las actuaciones de la licenciada y de la Unión cumplen con los requisitos de una reclamación de daños y perjuicios bajo las disposiciones del Código Civil. Ese mismo día, el TPI ordenó[8] la expedición de los emplazamientos personales dirigidos a la licenciada Jiménez Rosario.

A su vez, el mismo 23 de enero de 2025, notificada el 24 de enero de 2025, el TPI emitió una *Sentencia Parcial*[9]. El TPI concluyó, en primer lugar, que, conforme expuesto por Troche Rivera, el Tribunal sí tenía jurisdicción para atender su causa de acción. El TPI determinó que la Unión efectivamente inició el proceso de queja y agravio al apelar el despido y obtuvo un laudo de arbitraje favorable que ordenaba la restitución de Troche Rivera. De otro lado, el TPI destacó que cuando el tribunal falló a favor del DCR y dejó sin efecto el laudo, la Unión y la licenciada Jiménez Rosario no apelaron dicha determinación. Por lo anterior, el TPI destacó que lo reclamado por Troche Rivera en su demanda no incidía sobre ninguno de los supuestos bajo los cuales la CASP tenía jurisdicción primaria

---

[8] Entrada Núm. 8 de SUMAC-TPI.
[9] Entrada Núm. 11 de SUMAC-TPI.

exclusiva, pues lo que se reclamaba era la negligencia de no haber presentado la apelación ante el foro correcto, lo que causó que se despidiera injustificadamente a Troche Rivera, y consecuentemente los alegados daños.

Sin embargo, el TPI concluyó que la reclamación estaba prescrita. Como fundamento a su determinación, el TPI consignó lo siguiente:

> Pero, contrario a lo planteado por la parte demandante, la reclamación contra la parte demandada no se puede atender bajo los principios que rigen la prescripción de las reclamaciones de daños y perjuicios ordinarios. Esto, pues se trata del tipo de reclamación cobijada por la doctrina de justa representación.
>
> [...]
>
> En ese sentido, las reclamaciones por representación inadecuada que han sido reconocidas y adoptadas en la esfera federal tienen un término prescriptivo de seis (6) meses distintos a los casos ordinarios. Véase Del Costello v. Teamsters, 462 U.S. 151 (1983). **Dicho plazo es uno adecuado por analogía con la legislación estatal en controversia. Tanto así, que el legislador lo adoptó en el Plan de Reorganización de la Comisión Apelativa del Servicio Público, para los casos en que la CASP sí tiene jurisdicción primaria exclusiva.** (Énfasis nuestro).

Por lo anterior, el TPI coincidió con el planteamiento de la Unión de que ya había transcurrido el término prescriptivo de seis (6) meses para que Troche Rivera presentara su causa de acción y desestimó con perjuicio la demanda contra la Unión.

Insatisfecho, el 10 de febrero de 2025, Troche Rivera presentó una *Moción en Solicitud de Reconsideración*[10]. En lo aquí pertinente, alegó que, conforme resolvió[11] el Tribunal Supremo de Puerto Rico en el caso *Landrau y otros v. Autoridad de Puertos*, supra, procedía aplicar por analogía el termino prescriptivo de un (1) año para reclamaciones extracontractuales, pues el Alto Foro concluyó que la reclamación por daños extracontractuales es análoga al deber de

---

[10] Entrada Núm. 13 de SUMAC.
[11] Resuelto el 15 de enero de 2025—apenas una semana antes de la sentencia parcial emitida por el TPI.

justa representación. Además, añadió que, aun cuando no procede el término prescriptivo de seis (6) meses que alega la Unión, Troche Rivera estaba impedido legalmente de atender el asunto por desconocer hechos específicos que fueron obviados y por no haber sido orientado hasta el 26 de junio de 2024. En ese sentido, arguyó que lo único que le informó la licenciada Jiménez Rosario es que no apelaría la determinación de nulidad del laudo de arbitraje, pero no le informó sobre el error de haber presentado la apelación ante el foro equivocado. Troche Rivera expuso que, el 26 de junio de 2024 buscó orientación legal y fue en esa fecha que advino en conocimiento de la causa del daño consistente en el acto negligente de que su caso se manejó inadecuadamente por la Unión y la licenciada Jiménez Rosario. A la luz de lo anterior, solicitó que se dejara sin efecto la sentencia parcial.[12] El 11 de febrero de 2025, el TPI le ordenó a la Unión mostrar causa por las cuales no debía reconsiderar la sentencia parcial a la luz de lo resuelto por el Tribunal Supremo en el caso Landrau, *supra*.[13]

El 19 de febrero de 2025, la Unión presentó una *Moción en Oposición a Reconsideración*[14]. En síntesis, alegó que lo resuelto por el Tribunal Supremo en el caso de Landrau, *supra*, es que, en ausencia de un término dispuesto por ley, en las acciones civiles ordinarias la prescripción se rige por los postulados del Código Civil. La Unión destacó que, distinto al caso de Landrau, *supra*, en el que la Ley Núm. 130-1945 no disponía un término prescriptivo, en el presente caso la ley habilitadora[15] de la CASP sí establece un término prescriptivo de seis (6) meses, por lo que no aplicaba el

---

[12] Mientras, en esa misma fecha, Troche Rivera presentó *Segunda Demanda Enmendada* para incluir una causa de acción por incumplimiento de contrato y presentó alegaciones de mala práctica por parte de la Unión y la licenciada Jiménez Rosario. Al respecto, añadió que estaban ante una relación contractual cuyo término prescriptivo es de quince (15) años.

[13] Apéndice del *certiorari*, pág. 68.

[14] Entrada Núm. 17 SUMAC-TPI.

[15] Plan de Reorganización de la Comisión Apelativa del Servicio Público, Plan de Reorganización Núm. 2 de 26 de Julio de 2010, según enmendado. 3A LPRA Ap. XIII, Artículo 1 *et seq.*

término prescriptivo de un (1) año alegado por Troche Rivera. Por lo anterior, afirmaron que el caso de Landrau, *supra,* en realidad, confirmaba la contención de la Unión respecto a que el termino prescriptivo aplicable a la controversia era de seis (6) meses.

El 20 de febrero de 2025, notificada el 24 del mismo mes y año, el TPI emitió la *Resolución Interlocutoria* aquí recurrida, en la que determinó lo siguiente:

> Atendidas las posiciones de las partes y a la luz de lo resuelto por el Tribunal Supremo en el caso *Landrau v. Autoridad de los Puertos*, 2025 TSPR 7, se deja sin efecto la Sentencia Parcial dictada el 23 de enero de 2025. **Esto, por no encontrarse prescrita la causa de acción en daños por representación inadecuada.** (Énfasis nuestro).

Inconforme, la Unión solicitó reconsideración[16] el 11 de marzo de 2025. El 12 de marzo de 2025 el TPI la declaró No Ha Lugar[17].

Insatisfecho con el dictamen, la Unión acude ante este foro apelativo, mediante recurso de *certiorari* y formula los siguientes señalamientos de error:

1. Primer señalamiento de error: Erró el TPI al no desestimar la *Demanda* contra SPU por falta de jurisdicción, tras concluir que el caso no tenía que ser atendido por la CASP, por no fundamentarse en los escenarios contemplados en la legislación aplicable.

2. Segundo señalamiento de error (en la alternativa): Erró el TPI al dejar sin efecto la *Sentencia Parcial* mediante la cual había desestimado la demanda contra la SPU por prescripción, tras aplicar equivocadamente al caso del señor Troche lo resuelto por el Tribunal Supremo en Landrau v. Autoridad de Puertos, *supra*[18].

## II. Exposición de Derecho

### A. El Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[19]

---

[16] Entrada Núm. 19 de SUMAC-TPI.
[17] Entrada Núm. 20 de SUMAC-TPI.
[18] 2025 TSPR 7
[19] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[20] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[21], se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[20] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).
[21] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 62-63, 215 DPR __ (2025).

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[22]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[23] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B. Jurisdicción**

La jurisdicción es el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir los casos que se someten ante su consideración[24]. En relación con la jurisdicción y funcionamiento de las agencias administrativas, esta se deriva, y a su vez, se delimita por su ley habilitadora y reglamento.

---

[22] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).
[23] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[24] *DACo v. AFSCME,* 185 DPR 1 (2012).

Al aprobar la ley orgánica de una agencia, la Asamblea Legislativa autoriza y delega a ésta los poderes necesarios para que actúe de acuerdo con el propósito que persiguió el legislador con su creación. Al interpretar el alcance de los poderes delegados a una agencia administrativa, no se debe limitar el análisis a una interpretación restrictiva de su estatuto habilitador[25].

Para que un foro adjudicativo pueda atender y adjudicar un caso es necesario que el mismo tenga tanto jurisdicción sobre la materia como sobre las partes litigiosas. La jurisdicción sobre la materia se refiere a la autoridad del foro adjudicativo para atender y resolver una controversia sobre un asunto legal. Cuando no hay jurisdicción sobre la materia, el foro adjudicativo carece de facultad o poder para intervenir en la solución de la controversia planteada[26].

Los organismos administrativos con funciones adjudicativas, al igual que los foros judiciales, no tienen discreción para asumir jurisdicción donde no la hay. Las agencias administrativas solamente pueden ejercer los poderes que le fueron delegados por vía estatutaria. Es obligación de todo foro adjudicativo examinar y evaluar con rigurosidad su ámbito de jurisdicción toda vez que ello incide directamente sobre el poder mismo para adjudicar una controversia[27].

La determinación sobre autoridad para dirimir un caso o controversia es un asunto de umbral y tiene que atenderse con prioridad a cualquier otro asunto[28]. La razón para ello es sumamente sencilla: la ausencia de jurisdicción es insubsanable. Tan pronto el foro adjudicativo determina que no tiene jurisdicción, viene obligado a desestimar el caso[29].

---

[25] *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1050 (2013).
[26] *Shell v. Srio. Hacienda,* 187 DPR 109, 122 (2012).
[27] *Íd.*, pág. 123.
[28] Véase, *SLG Szendrey-Ramos v. F. Castillo*, 169 DPR 873-875 (2007); *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 249 (2012).
[29] *Íd.*

Los organismos administrativos, así como los foros judiciales, no tienen discreción para asumir jurisdicción donde no la hay. Las agencias administrativas solamente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y aquellos que sean indispensables para llevar a cabo su encomienda primordial. Así, pues, la ley es el medio por el cual el legislador autoriza y delega los poderes a la agencia administrativa para que actúe conforme a sus propósitos. Por esta razón, una agencia no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley para ello[30].

Aquella actuación administrativa que no obedezca el poder que se le confirió mediante legislación debe ser catalogada como *ultra vires.* En consecuencia, todos los actos u órdenes ejecutados por una agencia que se extralimitan de lo dispuesto en la ley habilitadora son erróneos y nulos[31].

Al revisar la jurisdicción de una agencia hay que recurrir, en primer lugar, a su ley habilitadora, pues es esta la que define y delimita la extensión de la jurisdicción del organismo administrativo. Por lo tanto, el tribunal determinará en su función revisora, si la actuación administrativa se ajusta o no al poder delegado. Para ello, es preciso interpretar la ley orgánica de la agencia atisbando la intención legislativa y así asegurar el resultado que quiso el legislador[32].

### C. Ley Núm. 45-1998, Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico

La Ley Núm. 45 de 25 de febrero de 1998, según enmendada, conocida como la *Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico* (Ley Núm. 45-1998), fue aprobada con el propósito de conferirles a los empleados públicos que no estén

---

[30] *DACo v. AFSCME*, supra, pág. 12.
[31] *Íd.*
[32] *Íd.,* pág. 13.

cubiertos por la Ley Núm. 130 del 8 de mayo de 1945, mejor conocida como la *Ley de Relaciones del Trabajo de Puerto Rico*[33], el derecho a la organización sindical y a la negociación colectiva, siempre que se observen los parámetros establecidos en la mencionada ley. *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 536-537 (2006).

En lo pertinente, el Artículo 8 de la citada ley, dispone lo siguiente,

a) Toda controversia surgida al amparo de un **convenio colectivo negociado** entre las partes, será dirimida a través de los mecanismos **pactados en el convenio colectivo** para el ajuste de quejas y agravios.

b) Todo convenio **entre el representante exclusivo y la agencia** deberá incluir procedimientos para resoluciones de quejas y agravios, incluyendo el arbitraje, que pueda surgir durante la vigencia de un convenio, incluyendo controversias sobre la aplicación e interpretación de sus cláusulas.

c) Las partes vendrán obligadas a acogerse al servicio de arbitraje provisto por la Comisión de Relaciones del Trabajo en el sector público. (Énfasis nuestro).

En lo aquí pertinente, el Artículo 9, Sección 9.2 de la Ley 45-1998, *supra*, define lo que se consideran prácticas ilícitas de parte de una organización de empleados o alguno de sus miembros. En lo aquí pertinente, esta expresa que,

Será práctica ilícita el que una organización de empleados o alguno de sus miembros, actuando individualmente o en concierto con otros, realice o intente realizar cualesquiera de los siguientes actos:

(f) negarse a someter las quejas, agravios y otras controversias que surjan con la agencia o con otras organizaciones de empleados a los procedimientos dispuestos en un convenio o en esta Ley, excepto en casos extraordinarios en los que la Comisión acepte entender directamente.

De otra parte, el Reglamento Núm. 6385 de 28 de diciembre de 2001, intitulado *Reglamento de la Comisión de Relaciones del Trabajo del Servicio Público* (Reglamento Núm. 6385) establece en su Artículo IV los procedimientos para los cargos de práctica ilícita. En

---

[33] 29 LPRA sec. 62.

ese sentido, la sección 400, especifica que dichos procedimientos serán de naturaleza adjudicativa y que podrán presentarse para:

1. Imputar la comisión de una práctica ilícita al amparo del Artículo 9 de la Ley (estos cargos se conocerán como cargos de prácticas ilícitas);

2. Solicitar la descertificación de una organización obrera cuando se alegue que se está violando la sección 4.7(c) de la Ley (estos procedimientos se conocerán como solicitudes de descertificación); e

3. Imputar una violación a las Secciones 7.1, 7.2, 7.3 y 7.4 de la Ley (estos cargos se conocerán como procedimientos especiales).

Subsiguientemente, la sección 404 establece cuál es el término para presentar los procedimientos antes mencionados. Esta dispone que,

[n]ingún caso podrá ser radicado luego de transcurrido seis (6) meses de los hechos que dan base al mismo, excepto que la parte contra quien se haya radicado, intencionalmente haya ocultado los hechos que dan base al mismo o que durante el periodo de seis (6) meses luego de los hechos, la parte promovente haya estado legalmente incapacitada para radicarlo, o que no tuvo conocimiento de los hechos durante ese periodo. En estos casos la Comisión determinará si la dilación en radicar el mismo es razonable conforme a los principios generales de incuria. (Énfasis nuestro).

## D. Ley Núm. 333-2004, Carta de Derechos de los Empleados Miembros de una Organización Laboral

La Ley Núm. 333 del 16 de septiembre de 2004, conocida como la *Carta de Derechos de los Empleados Miembros de una Organización Laboral*[34] fue aprobada con el propósito de crear un mecanismo jurídico para beneficio de todos los empleados públicos miembros de organizaciones laborales.[35] Con ello en mente, la Asamblea Legislativa determinó que era de gran interés público el establecer una Carta de Derechos que sea ejecutable por las agencias cuasi judiciales correspondientes que fiscalizan e

---

[34] 29 LPRA 100 *et seq.*
[35] Exposición de motivos, *Carta de Derechos de los Empleados Miembros de una Organización Laboral,* Ley Núm. 333-2004.

implantan la política sobre las relaciones-obrero patronales y los Tribunales de Justicia en los casos necesarios y apropiados.[36]

En lo pertinente, el Artículo 4 dispone lo relacionado a la jurisdicción para atender y resolver querellas o violaciones a la Carta de Derechos de los Empleados Miembros de una Organización Laboral. El citado artículo expresa lo siguiente:

> Se confiere jurisdicción para atender y resolver querellas o violaciones a la Carta de Derechos de los empleados miembros de una organización laboral, a la Junta de Relaciones de Trabajo en los casos de empleados y organizaciones laborales del sector público bajo su jurisdicción conforme a lo dispuesto en la Ley Núm. 130 de 1945, según enmendada, **y a la Comisión de Relaciones del Trabajo en el Servicio Público en los casos de empleados y organizaciones laborales bajo su jurisdicción, conforme a la Ley Núm. 45 del 25 de febrero de 1998, según ha sido enmendada… .**

> Las querellas de los empleados por violación a esta Ley… serán atendidas y consideradas por los organismos antes mencionados conforme a los procedimientos establecidos para ventilar y dilucidar las prácticas ilícitas del trabajo por las organizaciones obreras dispuestas en las leyes antes mencionadas que rigen las funciones y prerrogativas de dichos organismos cuasi-judiciales.

Además, el Artículo 5 expone lo siguiente:

> **Además de cualquier otro remedio dispuesto en las leyes orgánicas de la Junta o de la Comisión para los casos de prácticas ilícitas del trabajo** para ser impuestos a las organizaciones laborales, incluyendo la descertificación de la organización laboral, si se encuentra como hecho probado y fundamentado que la organización laboral ha incurrido en un patrón sostenido de violaciones a la Carta de Derechos dispuesto en esta Ley, la Junta o la Comisión, según sea el caso, podrá imponer multas de $500.00 hasta $5,000.00 por cada violación incurrida, **sin perjuicio del derecho de cualquier empleado de reclamar por la vía judicial indemnización por cualquier daño o perjuicio sufrido como consecuencia de la violación de su derecho reconocido por esta Ley conforme al ordenamiento jurídico civil.** (Énfasis nuestro).

E. **Convenio Colectivo de la Alianza Correccional Unida, Servidores Públicos de Puerto Rico Local 3500 SPU/AFSCME**

---

[36] *Íd.*

El convenio colectivo constituye la ley entre las partes que lo suscriben, siempre que no contravenga las leyes, la moral ni la Constitución. *Pérez v. Autoridad de Fuentes Fluviales,* 87 DPR 118, 122 (1963). El convenio colectivo recoge las normas que habrán de marcar las relaciones entre patronos y empleados por lo que sus términos y condiciones obligan tanto al patrono como a la unión y a sus miembros. *JRT v Junta Adm. Muelle Municipio de Ponce,* 122 DPR 318, 333 (1998). Al pactar su contenido, las partes deben cumplirlo con estricta rigurosidad. Ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas y rechazar otras. *COPR v. SPU,* 181 DPR 299, 320 (2011), seguido en *Aut. Puertos v. HEO,* 186 DPR 417 (2012).

El Convenio Colectivo de la Alianza Correccional Unida, Servidores Públicos de Puerto Rico Local 3500 SPU/AFSCME (en adelante Convenio Colectivo) fue pactado a la fecha del 19 de marzo de 2012[37]. En el Artículo II del Convenio Colectivo, se establece la declaración de principios y Exposición de Motivos. La Sección 3 dispone que,

> [l]as partes convienen en que habrán de **alentar y promover** la solución de todas las disputas mediante mecanismos de **quejas, agravios y arbitraje**, según se establezca en este Convenio y la Ley Núm. 45 del 25 de febrero de 1998, según sea enmendada. Además, cumplirán con lo establecido en dicha Ley así como en cualquier otra Ley Federal o Estatal y armonizar estos propósitos a la administración del convenio colectivo negociado y al agotamiento de remedios allí contenidos. (Énfasis nuestro).

### F. La Comisión Apelativa de Servicio Público (CASP)

La Comisión Apelativa del Servicio Púbico (CASP) es un organismo cuasi judicial de la Rama Ejecutiva, que se especializa en asuntos obrero-patronales y en el principio de mérito. Dicho organismo fue creado mediante el *Plan de Reorganización Núm. 2 de*

---

[37] A pesar de que de la faz del documento surge que la vigencia del Convenio Colectivo es de 2012-2015, este es el convenio colectivo vigente y aplicable al momento de los hechos del presente caso.

*2010*[38]*,* aprobado el 26 de julio de 2010 que fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público y la Comisión de Relaciones del Trabajo del Servicio Público como la nueva Comisión Apelativa de Servicio Público. En virtud de dicho estatuto, la Comisión atiende casos laborales, querellas y asuntos de administración de recursos humanos, de los empleados cobijados por la Ley Núm. 45-1998 y aquellos cubiertos por la Ley Núm. 184-2004.

En lo aquí pertinente, el Artículo 8 establece las facultades, funciones y deberes de la Comisión.

> La Comisión tendrá, entre otras, las siguientes facultades, funciones y deberes:
>
> [...]
>
> (j) conceder indemnizaciones por daños y perjuicios e imponer multas administrativas en todo tipo de discrimen que sea probado por los empleados que acuden ante este foro, sin menoscabo de los derechos de los servidores públicos de recurrir al foro judicial para el reclamo de daños y perjuicios cuando no lo reclamen ante la Comisión;

De otra parte, el Artículo 11, inciso (b) del *Plan de Reorganización Núm. 2 de 2010,* supra, establece la jurisdicción y el término para presentar los casos antes mencionados. El referido inciso lee como sigue:

> La Comisión tendrá **jurisdicción primaria exclusiva** sobre:
>
> [...]
>
> (b) las reclamaciones surgidas como consecuencia de acciones o decisiones de las organizaciones laborales, sindicales u obreras y de los representantes exclusivos en violación a las disposiciones de la Ley Núm. 45 de 1998, según enmendada.
>
> (c) las reclamaciones surgidas como consecuencia de acciones o decisiones de las organizaciones laborales, sindicales u obreras y de los representantes exclusivos en violación a las disposiciones de la Ley Núm. 333 de 2004, según enmendada. [39]

---

[38] 3 LPRA Ap. III.
[39] 3A LPRA Ap. XIII, Artículo 11.

Además, el artículo antes citado establece el término para presentar las reclamaciones antes mencionadas sobre las cuales la CASP ostenta jurisdicción primaria exclusiva. Sobre el particular, expone lo siguiente,

> [n]ingún caso podrá ser radicado luego de transcurrido seis (6) meses de los hechos que dan base al mismo, excepto que la parte contra quien se haya radicado, intencionalmente haya ocultado los hechos que dan base al mismo o que durante el periodo de seis (6) meses luego de los hechos, la parte promovente haya estado legalmente incapacitada para radicarlo, o que no tuvo conocimiento de los hechos durante ese periodo. En estos casos la Comisión determinará si la dilación en radicar el mismo es razonable conforme a los principios generales de incuria. (Énfasis nuestro).

## III. Aplicación del Derecho a los hechos

En su recurso de *certiorari*, la Unión argumenta que el foro primario incidió al no desestimar la demanda en su contra y concluir que la reclamación de Troche Rivera no tenía que ser atendida ante la CASP por entender que la demanda no estaba basada en los supuestos contemplados en las leyes aplicables. La Unión alega, en la alternativa, que el TPI erró al dejar sin efecto la sentencia parcial, pues entiende que el foro primario aplicó equivocadamente el caso *Landrau.* Veamos.

En primer lugar, resulta importante señalar que, en su recurso, la Unión expuso que, aunque no estuvo conforme con la determinación de que el TPI tenía jurisdicción, **no solicitó reconsideración sobre dicho asunto**, debido a que la sentencia parcial desestimaba la causa de acción en su contra, aunque por otro fundamento (la prescripción).

Ahora bien, luego de evaluar la totalidad del expediente ante nuestra consideración, de conformidad con el marco legal antes expuesto, concluimos que no se cometió el error señalado. Basta una lectura de la demanda para entender que estamos ante una demanda en la que solamente se reclama una indemnización por los daños y perjuicios sufridos por Troche Rivera. Los daños y perjuicios

reclamados por este surgen como consecuencia de la acción negligente de la Unión de presentar la apelación de despido ante la comisión equivocada. En su demanda, Troche Rivera **no** presentó alegaciones sobre violación o incumplimiento de la Unión con las disposiciones de la Ley 45-1998, de la Carta de Derechos *de los Empleados Miembros de una Organización Laboral,* ni del Convenio Colectivo y demás leyes y reglamentos aplicables. Tampoco reclamó que la Unión se negó a presentar sus quejas y agravios, pues, en efecto, la Unión sí tramitó la apelación de su despido, ni reclamó violación al deber de justa representación.

Además, la reclamación de daños por negligencia que nos ocupa no está especificada dentro del ámbito de los asuntos sobre los cuales se le confiere jurisdicción primaria exclusiva a CASP. Por tanto, dicha reclamación no está subordinada a la jurisdicción primaria exclusiva de la CASP, lo cual no excluye la jurisdicción que de otro modo pueda tener el TPI sobre este tipo de reclamación, pues sabido es que el tribunal de primera instancia tiene jurisdicción para dirimir una controversia sobre daños y perjuicios.

Así pues, reiteramos que la reclamación no es por práctica ilícita o violación al deber de justa representación conforme pactado por las partes en el Convenio Colectivo, sino una reclamación de alegada negligencia de la Unión y la licenciada Jiménez Rosario, lo que ocasionó daños y angustias mentales a Troche Rivera.

En cuanto al segundo señalamiento de error de que el TPI aplicó incorrectamente lo resuelto por el Tribunal Supremo en el caso *Landrau,* supra, concluimos que no se cometió el error señalado. Nos explicamos.

Primero, en el caso de *Landrau,* supra, el Tribunal Supremo resolvió que una unión sindical, ante su deber de fiducia hacia sus representados y rol protagónico en la negociación, puede ser

demandada en los foros judiciales mediante una causa de acción sobre justa representación[40].

Segundo, en el caso de *Landrau*, supra, existían reclamaciones mixtas contra el patrono y la unión, que se regían por términos prescriptivos distintos. En el presente caso, estamos ante una sola reclamación contra la Unión y la licenciada Jiménez Rosario sobre daños y perjuicios por negligencia, la cual se rige por el término prescriptivo de un (1) año establecido en el Código Civil. En *Landrau*, supra, el Alto Foro resolvió que, en ausencia de legislación específica, aplica por analogía el término de un (1) año dispuesto para reclamaciones de daños extracontractuales. Lo anterior, pues el Tribunal Supremo determinó que la reclamación de daños extracontractuales es análoga al deber de justa representación[41].

En vista de lo anterior y conforme expusimos anteriormente, **en el presente caso no existen alegaciones o reclamaciones que se encuentren especificadas ni subordinadas a las instancias en que la CASP posee jurisdicción primaria exclusiva y que, por ende, le aplique el término prescriptivo de seis (6) meses.** De hecho y de conformidad con el marco legal antes expuesto, las instancias específicas que están subordinadas a la jurisdicción de la Comisión, ya sea bajo la Carta de Derechos de los Empleados Miembros de una Organización Sindical o bajo la ley habilitadora de la CASP, **en lo que respecta al asunto de indemnización por daños y perjuicios**, disponen que la indemnización que pueda conferir la Comisión es sin perjuicio del derecho del empleado de reclamarlos por la vía judicial.[42]

---

[40] *Landrau v. Autoridad de los Puertos*, 2025 TSPR 7
[41] *Íd.*, en la pág. 22.
[42] Véase, Artículo 5 de la Carta de Derechos de los Empleados Miembros de una Organización Sindical y Artículo 8(j) del Plan de Reorganización de la Comisión Apelativa del Servicio Público.

Además, conforme resolvió el Tribunal Supremo en *Landrau*, supra, los vínculos obligacionales entre una unión y sus representados es análoga a la relación médico-paciente y abogado-cliente, por lo que "si el hecho causante del daño constituye una violación del deber general de no causar daño a otro", procede una reclamación de daños extracontractuales, independientemente de un quebrantamiento de un contrato[43]. En ese sentido, la Alta Curia señaló en *Landrau,* supra, que la unión tiene un deber de fiducia el cual es independiente del Convenio Colectivo e implícito en la naturaleza de la unión como representante exclusivo de los empleados de la unidad apropiada[44].

Por consiguiente, el TPI no aplicó equivocadamente lo resuelto por el Tribunal Supremo en el caso Landrau y concluimos que no se cometieron los errores señalados.

No obstante, es preciso señalar que con esta determinación no pasamos juicio sobre la procedencia de la reclamación objeto del presente caso, ni prejuzgamos los méritos del mismo. De igual forma, reiteramos la norma firmemente establecida por el Tribunal Supremo de que toda revisión se da contra el dictamen y no sus fundamentos".[45]

En virtud de lo anterior, los cuales se hacen formar parte de esta Sentencia, expedimos el auto de *certiorari* y CONFIRMAMOS la *Resolución Interlocutoria* recurrida.

### IV. Parte Dispositiva

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se CONFIRMA la Resolución Interlocutoria.

Notifíquese.

---

[43] *Íd.,* en la pág. 23.

[44] *Íd.*

[45] *Sánchez v. Eastern Air Lines, Inc.,* 114 DPR 691, 695 (1983); *Collado v. ELA,* 98 DPR 111, 114 (1969); *Rodríguez v. Serra,* 90 DPR 776, 777 (1964).

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones